**SO ORDERED.**

**SIGNED January 31, 2012.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

```
            UNITED STATES BANKRUPTCY COURT
            WESTERN DISTRICT OF LOUISIANA
                 ALEXANDRIA DIVISION

IN RE:

CENTRAL LOUISIANA GRAIN
COOPERATIVE, INC.,                       CASE NO. 08-80475

     Debtor
----------------------------------------------------------------
THOMAS R. WILLSON,
CHAPTER 7 TRUSTEE

VERSUS                                   ADVERSARY NO. 10-8012

SCOTT D. VANDERLICK, ET AL
----------------------------------------------------------------
                      MEMORANDUM RULING
----------------------------------------------------------------
```

Thomas R. Willson, the duly appointed Chapter 7 trustee of Central Louisiana Grain Cooperative, Inc. (the "Trustee"), commenced this adversary proceeding against approximately 270 defendants. The Trustee seeks recovery of alleged preferential and fraudulent transfers under 11 U.S.C. §§ 544, 547(b), 548, and 550. One of the defendants, First South Farm Credit, ACA ("First

South"), filed the present Motion for Summary Judgment requesting dismissal of the preference claims asserted against it. The court took this motion under advisement following a hearing on the motion. After considering the parties' arguments, the summary judgment record, and the applicable authorities, the court rules on First South's motion as follows.

## BACKGROUND

The debtor is a Louisiana agricultural cooperative association formed under La. R.S. 3:71 *et seq.* The debtor entered into grain contracts with its farmer members, who delivered grain to the debtor. According to the Trustee, the debtor purchased the grain upon delivery, but would not advance the entire purchase price at the time of purchase. Instead, the debtor's members received a credit with the debtor and received payments from the debtor's grain account over a period of time. The debtor would replenish its grain account as it sold grain to third-party purchasers. The debtor filed for relief under Chapter 7 of the Bankruptcy Code on April 10, 2008, and the Trustee was subsequently appointed.

The Trustee contends that the payments from the debtor's grain account to its members during the one-year period prior to the bankruptcy filing were preferential transfers to insiders subject to avoidance under 11 U.S.C. §§ 547(b) and 550. Alternatively, the Trustee contends that the transfers were avoidable fraudulent

-2-

transfers under 11 U.S.C. §§ 548 and 544. The Trustee contends that the debtor's members are pre-petition creditors of the debtor, and that the transfers to these members were for or on account of an antecedent debt owed by the debtor. Specifically, the debtor held a grain account with Colfax Banking Company and, during the one-year period leading up to the bankruptcy filing, the debtor issued checks from that account to the individual defendants named in this adversary proceeding. The Trustee alleges that First South was a joint payee on approximately ninety (90) checks issued within the one-year prior to the bankruptcy filing. Of these ninety checks, two checks were issued within the 90-day period prior to the filing. First South was not a creditor of the debtor. First South made loans to the debtor's individual members and, in turn, obtained a security interest in their crops. First South's loan and security agreements required that checks from the debtor to its members be issued jointly to First South and the individual members. To the extent that an individual member had a balance on its loan with First South, First South would receive the check from the debtor and apply those funds to the extent of the outstanding debt. If there was no outstanding balance on a member's loan, First South endorsed the check over to the member. First South did not file an answer to the complaint, but filed the instant Motion for Summary Judgment seeking dismissal of the Trustee's

-3-

preference claims against First South under Section 547(b).

**DISCUSSION**

**A. Summary Judgment Standard**

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P 56). The purpose of summary judgment is to pierce the pleadings and to assess the proof to determine whether there is a genuine need for trial. See Matsushita Electric Industries v. Zenith Radio Corp. 475 U.S. 574, 587 (1986). Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses. Celetex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Where, as here, the movant does not bear the burden of persuasion, the movant may satisfy its summary judgment burden by pointing to an absence of evidence supporting an essential element of the non-moving party's claim. Celetex Corp., 477 U.S. at 324-326 (absence of support for an essential element of the plaintiff's claim entitles the defendant to summary judgment unless in response the plaintiff non-movant sets forth facts that permit a reasonable trier of fact to find for the plaintiff on that essential element of his claim). Assuming that the movant has met this burden, the non-movant plaintiff must come forward with "substantial evidence" supporting

-4-

the essential elements challenged in the motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In other words, the evidence must be sufficient to withstand a motion for directed verdict and to support the verdict of a reasonable jury. Id. Under this standard, the non-movant cannot rely on unsupported assertions or arguments, but must submit sufficiently probative evidence supporting the essential elements of its claims challenged in the motion for summary judgment.

**B. Is First South Entitled to Summary Judgment?**

First South contends that it is entitled to summary judgment because it has negated one or more essential elements of the Trustee's preference claim under section 547(b). "Under the Bankruptcy Code's preference avoidance section, 11 U.S.C. § 547, the trustee is permitted to recover, with certain exceptions, transfers of property made by the debtor within 90 days before the date the bankruptcy petition was filed." Barnhill v. Johnson, 503 U.S. 393, 394, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). "This rule 'is intended to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy.'" Lindquist v. Dorholt (In re Dorholt, Inc.), 224 F.3d 871, 873 (8th Cir. 2000) (quoting Jones Truck Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund (In re Jones Truck Lines, Inc.), 130 F.3d 323, 326 (8th Cir.

-5-

1997)). Section 547(b) of the Bankruptcy Code sets forth the six essential elements of a preference claim:

    (1) "a transfer of the debtor's interest in property;"

    (2) "to or for the benefit of a creditor;"

    (3) "for or on account of an antecedent debt owed by the debtor before such a transfer was made;"

    (4) "made while the debtor was insolvent;"

    (5) "made on or within 90 days before the date of the filing of the petition" (or one year if an insider); and

    (6) one "that enables such creditor to receive more than such creditor would receive" if (A) the debtor filed under Chapter 7, and (B) the transfer had not been made.

11 U.S.C. § 547(b). Assuming that the Trustee establishes each of the essential elements of a preference claim under section 547(b), 11 U.S.C. § 550 provides the basis for recovering the transferred property (or the value of that property) from the initial transferee as well as the "immediate or mediate" transferee of the initial transferee:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

-6-

>    (2) any immediate or mediate transferee of such initial transferee.

### 1. Does First South's Security Interest Preclude a Claim Under Section 547(b)?

First South first argues that, as a result of its UCC security interest in the crops and crop proceeds of the individual members, any transfers from the debtor would not enable it to receive more than it would otherwise receive in a Chapter 7 liquidation had the transfer not been made. See In re McConnell, 455 B.R. 824, 827 (Bankr. M.D. Ga. 2011) ("Generally, payments to a fully secured creditor will not be considered preferential because the creditor would not receive more than in a Chapter 7 liquidation") (citing 5 Collier on Bankruptcy ¶ 547.03 [7] at 547-43 (16th ed. 2011)); See also Barash v. Public Finance Corp., 658 F.2d 504, 508-09 (7th Cir. 1981). The flaw in this argument is that this element of section 547(b) addresses whether or not a creditor **of the debtor** receives more than it would otherwise receive in a hypothetical Chapter 7 liquidation of the debtor's estate. Section 547(b) refers to a transfer "to or for the benefit of a creditor" for or on account of an antecedent debt "owed **by the debtor**" which "enables **such creditor** to receive more than such creditor would receive" in a Chapter 7 liquidation. Here, the creditors for purposes of section 547(b) are the debtor's members who delivered grain to the debtor on credit, not First South. Because these members' claims against

-7-

the debtor are unsecured, any transfers to or for the benefit of these creditors would give them more than they would receive in the Chapter 7 liquidation of the debtor's estate absent the transfer. In contrast, First South is not a creditor of the debtor. See In re C-L Cartage Co., Inc., 899 F.2d 1490, 1493 (6th Cir. 1990) (lender to one of the debtor's creditors could not escape a section 547(b) preference claim based on its security interest in the property of the creditor; the lender was not a creditor of the debtor and the debtor's creditor was unsecured).

**2. Was First South a Transferee Liable Under Section 550?**

First South next argues that it cannot be liable for any avoidable transfers under 11 U.S.C. § 550 with respect to the joint payee checks that it merely endorsed over to its customers because it received no benefit from the transfers. Section 550 provides that a trustee may recover from "the initial transferee of such transfer or the entity for whose benefit such transfer was made; or ...(2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). Subject to the "single satisfaction" rule (11. U.S.C. § 550(d)), a trustee may recover from any of these entities. The Trustee contends that any transfers to First South as the initial transferee were for the benefit of the debtor's members, and that he need not establish that the transfer benefitted First South to recover under section

-8-

550. Courts have held that the "initial transferee" and the "entity for whose benefit such transfer was made" referenced in section 550(a)(1) are distinct and exclusive. See, e.g., In re Chase & Sanborn Corp., 904 F.2d 588, 597 n. 22 (11th Cir. 1990) ("The Seventh Circuit in Bonded, however, concluded that the structure of section 550 requires that 'initial transferees' and 'beneficiary entities' be treated as mutually exclusive categories, and that 'section 550 distinguishes between transferees (those who receive the money or other property) from entities that get a benefit because someone else received the money or property.'") (quoting Bonded Financial Services, Inc. V. European American Bank, 838 F.2d 890, 896 (7th Cir. 1988); In re Columbia Data Products, Inc., 892 F.2d 26, 29 (4th Cir. 1989). In other words, First South may still be an initial transferee under the first prong of section 550(a)(1) even if it is not the entity for whose benefit a transfer was made. In re Roti, 271 B.R. 281, 299 (Bankr. N.D. Ill. 2002) (fact that transferee did not benefit from transfer did not shield it from liability under section 550(a)(1) as an initial transferee). Is First South entitled to summary judgement as to whether it is an initial transferee? Ordinarily, the party who receives a transfer of property directly from the debtor is deemed the initial transferee. However, courts have held that a party who acts merely as a "conduit" in facilitating the transfer of property

-9-

from the debtor to a third party is not an initial transferee within the meaning of section 550(a)(1). The distinction between a mere conduit and an initial transferee turns on the extent to which the party receiving the property exercises "dominion and control" over the property. See, e.g., In re Coutee, 984 F.2d 138 (5th Cir. 1993); In re Chase & Sanborn Corp., 848 F.2d at 1200 (holding that bank was initial transferee of funds received from the debtor because it exercised dominion and control over the funds); In re Imageset, Inc., 299 B.R. 709, 718 (Bankr. D. Me. 2003) (applying the "dominion and control" test).

The Trustee contends that whether or not First South exercised sufficient dominion and control over the joint payee checks is a question of fact that requires the court to evaluate the transaction in its entirety and cannot be decided on summary judgment. (Trustee's Memorandum in Opposition to Motion for Summary Judgment at p. 5) (citing In re Chase & Sanborn Corp., 848 F.2d 1196, 1200 (11th Cir. 1988)). Alternatively, the Trustee argues that summary judgment is inappropriate prior to discovery and the filing of answers by many of the defendants. The Trustee contends that it is entitled to conduct discovery into the transfers made to First South and First South's disposition of the joint payee checks. In this regard, the Trustee points out that some of the debtor's members who allegedly received endorsed checks from First

-10-

South have only recently engaged counsel, and have not yet participated in discovery. Without deciding whether the "dominion and control" test can be decided on summary judgment based on the current record, the court agrees with the Trustee that he is entitled to reasonable discovery from First South and the individual defendants before responding to First South's argument that it cannot be held liable as an initial transferee under Section 550. First South's pre-discovery motion for summary judgment is, therefore, premature. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 250 n.5 (1986) ("Summary judgment must be refused where the non-moving party has not had the opportunity to discover information that is essential to his opposition").

**3. Is First South Subject to the Insider Preference Period?**

Finally, First South contends that it is entitled to summary judgment with respect to any of the joint payee checks dated more than ninety days prior to the bankruptcy filing because it is not an "insider" of the debtor. Section 547(b) incorporates two preference periods. The first preference period covers the 90-day period prior to the filing and it applies regardless whether a creditor is an insider of the debtor. With respect to creditors who are "insiders" of the debtor as defined in 11 U.S.C. § 101(31), the preference period extends to transfers within one year of the filing date. Section 101(31) defines the categories of persons and

-11-

entities that qualify as insiders:

> The term "insider" includes–
>
> (A) if the debtor is an individual–
>
> (I) relative of the debtor or of a general partner of the debtor;
>
> (ii) partnership in which the debtor is a general partner;
>
> (iii) general partner of the debtor; or
>
> (iv) corporation of which the debtor is a director, officer, or person in control;
>
> (B) if the debtor is a corporation–
>
> (I) director of the debtor;
>
> (ii) officer of the debtor;
>
> (iii) person in control of the debtor;
>
> (iv) partnership in which the debtor is a general partner;
>
> (v) general partner of the debtor; or
>
> (vi) relative of a general partner, director, officer, or person in control of the debtor;
>
> (C) if the debtor is a partnership–
>
> (I) general partner in the debtor;
>
> (ii) relative of a general partner in, general partner of, or person in control of the debtor;
>
> (iii) partnership in which the debtor is a general partner;
>
> (iv) general partner of the debtor; or

(v) person in control of the debtor;

First South contends that it does not fall within the statutory definition of an insider under this provision. First South is not a director, officer, or "person in control" of the debtor. Indeed, there are no allegations in the complaint or evidence in the summary judgment record establishing any relationship between First South and the debtor that would qualify First South as an insider under section 101(31). The Trustee correctly points to case law recognizing a non-statutory basis for insider status, but even these cases require some evidence of control over the debtor. See, e.g., Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.), 531 F.3d 1272, 1280 (10th Cir. 2008). Neither the complaint nor the summary judgment record establishes any such control, nor has the Trustee come forward with any evidence of such control. Given the statutory definition of an insider under section 101(31) and the relevant case law, it does not appear that further discovery is likely to provide evidence that First South is an insider.

Several of First South's customers who are named in the complaint also filed an opposition to First South's Motion for Summary Judgment and argue that there is a genuine question of material fact as to whether First South qualifies as an insider of the debtor. (See Memorandum in Opposition to Summary Judgment filed

-13-

by Justin DeKeyzer, DeKeyzer Farms, Hargis Farm Partnership, Ben W. and Michelle Littlepage, and Puckett Farms, Dkt. No. 447). Citing Floyd v. Hefner, 556 F.Supp.2d 617 (S.D. Tx. 2008), these defendants argue that the debtor's individual members are insiders, and that First South's loan and security agreements with these members may support a finding that First South is also an insider of the debtor. Floyd, however, is distinguishable because the lender in that case was both a creditor of the debtor as well as a creditor of certain insiders of the debtor. These insiders, in turn, also owned interests in and controlled the lender. The court concluded that these relationships created a fact question as to whether the lender was also an insider of the debtor. 556 F. Supp. 2d at 658-59. In contrast, neither the complaint nor the parties' submissions reveal any of the complex inter-relationships that existed in Floyd: First South was not a creditor to the debtor, nor did the debtor's members control or own any interest in First South. To the extent that First South is not an insider, it cannot be liable under section 550 for transfers occurring more than 90 days prior to the bankruptcy filing, even if the transfers were made for the benefit of an insider. See 11 U.S.C. § 550 ("If a transfer made between 90 days and one year before the filing of the petition ... was made for the benefit of a creditor that at the time of such transfer was an insider; the trustee may not recover under subsection (a) from a transferee that is not an insider.")

-14-

The court's conclusion in this regard, however, does not support summary judgment in favor of First South based on the summary judgment record before the court. The summary judgment record includes copies of the joint payee checks, the dates of those checks, the dates the checks were received by First South, and the disposition of the checks by First South. However, the Supreme Court has held that the date the check is **honored** is the date of the transfer for purposes of determining whether or not a transfer by check falls within the 90-day preference period. <u>Barnhill v. Johnson</u>, 503 U.S. 393 (1992) The summary judgment record does not establish when the joint payee checks were honored. While it may be reasonable to assume that checks dated and received several months prior to the beginning of the 90-day preference period were honored more than 90 days before the bankruptcy filing, First South has not established which transfers fell outside of the 90-day preference period as a matter of law.

### CONCLUSION

For the reasons set forth herein, the court **DENIES** First South's motion for summary judgment without prejudice. The court **GRANTS** First South leave to file a motion for summary judgment following the close of discovery. First South shall submit an order that reflects the court's ruling herein.

**IT IS SO ORDERED.**

###

-15-